IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CIVIL ACTION NO. H-10-3713 |
| v. | § | |
| | § | CRIMINAL ACTION NO. H-06-433 |
| HECTOR MANUEL NUNEZ-RODRIGUEZ | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Hector Manuel Nunez-Rodriguez filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket Entry No. 188.) The Government responded (Docket Entry No. 195), and Defendant filed a reply (Docket Entry No. 197).

Based on consideration of the section 2255 motion, the response and reply, the record, and the applicable law, the Court DENIES the section 2255 motion, as follows.

*Procedural Background and Claims*

The jury found Defendant guilty of conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (count one), and of aiding and abetting the possession with intent to distribute more than five kilograms of cocaine, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). The Court sentenced him to 151 months imprisonment as to each count, to run concurrently, followed by a five year term of supervised release. The convictions and sentences were affirmed on appeal, *United States v. Nunez*, 320 F. App'x 236, 2009 WL 909434 (5th Cir. 2009), and the Supreme Court denied review.

In his section 2255 motion, Defendant alleges that trial counsel was ineffective in the following particulars:

(1) stipulating to improper evidence of the cocaine without his consent;

(2) stipulating to the admissibility of telephone records without his consent;

(3) failing to object to the magistrate's misleading description of the charges at arraignment;

(4) failing to object to the Court's improper jury instruction;

(5) failing to argue "mere presence";

(6) failing to request an expert witness jury instruction; and

(7) failing to object at sentencing to the incorrect weight of the cocaine.

Respondent argues that these claims are groundless.

*Factual Background*

The Fifth Circuit Court of Appeals set forth the following statement of facts in its opinion affirming Defendant's convictions on appeal:

> Alfonso Alvarez, a police officer with the South Houston Police Department, was working undercover when an informant told him that Luis Guerra was selling large quantities of cocaine. The informant, Guadelupe Contreras, was a convicted felon who knew Guerra. Contreras called Guerra on Alvarez's behalf and asked whether Guerra could secure cocaine for Alvarez. Guerra agreed, and Contreras arranged for the three to meet at a local taqueria on October 31, 2006, to discuss the deal.
>
> At the taqueria Guerra told Alvarez and Contreras that he would only sell them the cocaine at his residence. When the three later left the taqueria, Alvarez and Contreras followed Guerra to Hector Nunez's home at 7310 Legacy Pines Drive. They watched Guerra pull into the driveway and spoke with him by cell phone to confirm the residence was the place the transaction would take place.

The next day Alvarez and Guerra spoke via phone and arranged to meet at Nunez's home on November 2.

On November 2, Alvarez and Guerra communicated via cell phone. That afternoon Alvarez drove Contreras to Nunez's home and let Contreras out to verify the cocaine was there; Alvarez then drove off. Contreras entered the home and Guerra showed him the cocaine. Contreras testified that Nunez, who was standing nearby, promised him the cocaine 'was good.' Contreras then called Alvarez, who returned to pick him up.

Alvarez immediately alerted agents who had been surveying 7310 Legacy Pines Drive that there was cocaine in the home. One of those agents was Violet Szeleczky-Brown. She testified that on the morning of November 2 she saw Nunez standing in the open garage. At around noon she saw a white pickup that was registered to Nunez pull into the driveway; Guerra was its passenger. Guerra got out of the truck and entered the home. He then exited the home, got back into the passenger side of the truck, and left. Szeleczky-Brown was still watching when, three hours later, Guerra returned, this time as the passenger of a white Volkswagen Jetta. When Guerra entered the home, the car drove away. Guerra and Nunez later came outside and played basketball. Szeleczky-Brown testified that at some point Guerra took a phone call on his cell phone and, after he hung up, he spoke to Nunez and the two began jumping in the air and gave each other a high five. Minutes later, a navy pickup pulled into the drive. A man later identified as Arnoldo Trevino got out of the truck and handed a blue bag to Guerra. After Guerra and Nunez walked into the home, Trevino drove away. Alvarez and Contreras arrived shortly thereafter, and Szeleczky-Brown watched as Contreras entered and later exited the home.

Shortly after Alvarez alerted them, agents arrived to execute search and arrest warrants. They found the blue bag and 17 bricks of cocaine in it. They also found pieces of paper on which what appeared to be monetary calculations had been written. The agents seized that evidence, along with Guerra's and Nunez's cell phones. They arrested Guerra and Nunez.

Fingerprints taken from both the bag and the pieces of paper were later matched to those of Guerra. Cell phone records showed that on the day Guerra met Alvarez and Contreras at the taqueria, Guerra called Nunez twenty-two times.

> On November 29, a grand jury indicted Guerra, Nunez, and Arnoldo Trevino and charged them with conspiracy to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and aiding and abetting possession with intent to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2. Trevino pleaded guilty to conspiracy; Guerra and Nunez tried their case to a jury and were convicted of both conspiracy and aiding and abetting possession.

*Nunez*, 320 F. App'x at 237–39 (footnotes omitted).

### *Standard of Review*

Following a conviction and direct appeal, a defendant stands presumed fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991). As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice. *Id.* Other types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

Thus, before a court may grant relief pursuant to section 2255, the movant must establish one of the following: (1) the sentencing court imposed the sentence in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.

*Ineffective Assistance of Counsel*

To assert a successful ineffectiveness claim, a criminal defendant must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.

Defendant claims that counsel was ineffective in the following instances.

*Stipulations as to cocaine and telephone records*

Defendant asserts that trial counsel improperly stipulated to the admissibility, purity, and weight of the cocaine recovered by the Government, and to admissibility of certain telephone records. Specifically, Defendant complains that defense counsel agreed, without Defendant's knowledge or approval, to enter into stipulations that the State's expert witness chemist would testify that the seized substance was 17 kilograms of 80% pure cocaine, and

5

to the admissibility of inculpatory telephone records. Given a liberal construction, his pleadings also claim that counsel's agreeing to the stipulations constituted ineffective assistance.

During trial, the Government read into the record the following two stipulations between defense counsel and the Government:

> GOVERNMENT: Your Honor, at this time I'd just like to read the two stipulations that are in this case. They are Exhibits 18 and 19.
>
> THE COURT: All right.
>
> GOVERNMENT: The first is Stipulation No. 1. United States of America and counsel for the defendants, Carlos Luis Guerra and Hector Nunez, hereby stipulate and agree to the admissibility of United States Exhibit 1 and waive any cross-examination of any witnesses in the admission of these exhibits, and, accordingly, stipulate and agree that if Darrell Eubank, DEA forensic chemist, were present in court and sworn as a witness, he would testify that Exhibit 1 is 17.01 kilograms of cocaine, a Schedule II controlled substance, with a purity of 80 percent.
>
> And Stipulation of Evidence 2: The United States of America and counsel for the defendants, Hector Luis Guerra and Hector Manuel Nunez, hereby stipulate and agree that the documents identified in Exhibits 8 and 9, phone records, are true and complete copies of such and that Exhibits 8 and 9 may be admitted into evidence in lieu of the original without calling any authentication witnesses or any witnesses to establish an exception to the hearsay rule. Thus, the parties stipulate to the admissibility of Exhibits 8 and 9 and waive any right to cross-examine any witnesses in the admission of these exhibits. All parties reserve the right to introduce testimony to develop and explain the background and circumstances surrounding Exhibits 8 and 9, as well as the event or transaction reflected by such documents.
>
> THE COURT: All right.

(Docket Entry No. 153, pp. 77–78.)

Trial counsel filed an affidavit in this proceeding regarding Defendant's claims of ineffective assistance, testifying as follows:

1. I represented the above named client.

2. It was a trial that lasted for about 3 days.

3. I have forgotten about this case in [its] entirety.

4. All the issues he alleged were not true.

5. I visited him in detention with another lawyer that speaks spanish more than 5 times before the trial.

6. I visited him in detention with the same lawyer that speaks spanish more than 5 times after the trial to explain the punishment phase.

7. This lawyer was Julia Maldonado.

8. Julia Maldonado sat with me during the trial for 2 out of the 3 days.

9. He understood the charges, he understood the nature of the offense, he understood the trial proceeding, he understood the investigation and he understood the sentencing.

10. His only concern then was that he would not want his wife, his wife's family and his 18 year old step-daughter to be implicated in this matter.

11. He tried to cover his criminal track [sic] by putting his home, his cars and bank account in his step-daughter's name.

12. In this trial evidence showed that more than 10 kilos of cocaine was involved. He was at home when the drug was delivered, he inspected the drugs to be of good quality and the measurement scale and log book to compare the street value were all found in the possession of him and his wife. The only person that was not home at the time of delivery of the cocaine was the step-daughter.

13. He was determined to take blame for all these provided his wife would not be implicated.

14. He fully understood the difference between possession and ownership as reflected in this case.

15. After the trial he spent all his time trying to blame one of the co-conspirators that he was a chicken and a traitor.

(Docket Entry No. 193, pp. 1–2.) The affidavit provides no insight into counsel's actions or decisions regarding the two evidentiary stipulations.

In reviewing the merits of an ineffective assistance of counsel claim, the Court must presume that counsel's complained-of conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Reviewing courts must consider the totality of the evidence in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. Conclusory allegations are insufficient to obtain relief under section 2255. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding).

Here, Defendant presents nothing more than his conclusory assertions that the decision to stipulate was not strategic because counsel did not adequately investigate the case, and that the stipulations had no relationship to any possible defense strategy. (Docket Entry No. 197, p. 10.) These conclusory allegations are insufficient to rebut the presumption that counsel's actions were reasonable trial strategy. More significantly, Defendant does not

show that the telephone records and chemist's testimony regarding the cocaine would not have been admissible at trial but for counsel's stipulations.

Nevertheless, even assuming that counsel's entering into the stipulations without Defendant's knowledge or approval constituted deficient performance, Defendant must establish actual prejudice. That is, Defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the results of the trial would have been different. Neither Defendant nor the record before this Court shows that, absent counsel's stipulations, the complained-of evidence would not have been admitted into evidence, and Defendant fails to establish that, but for counsel's deficient performance, there is a reasonable probability that he would not have been found guilty.

Defendant is not entitled to habeas relief on this issue.

*Failure to object to statement of charges at arraignment*

Defendant claims that trial counsel failed to object to the magistrate judge's improper statement of the charges at Defendant's arraignment, which caused Defendant's plea of not guilty to be made involuntarily and unknowingly.

Defendant unsuccessfully argued on direct appeal that the magistrate's statement of the charges at arraignment had been improper. In rejecting Defendant's argument, the Fifth Circuit Court of Appeals held as follows:

> Nunez also claims that at his arraignment hearing the magistrate judge incorrectly summarized the charges against him and therefore his not-guilty plea was not knowing and voluntary. We find no error in the magistrate judge's delivery of the charges at Nunez's arraignment.

9

A defendant has a right to know the charges against him and to have adequate information from which to prepare his defense. An arraignment protects those rights. *See* FED. R. CRIM. P. 10 (defendant shall be informed of 'the substance of the charge' and called on to plead thereto). A conviction will not be vacated, however, for lack of formal arraignment proceedings, absent possible prejudice.

The indictment in this case charged Guerra, Nunez, and Trevino with two counts, one for conspiracy and the other for possession. At the arraignment, the magistrate judge confirmed that the defendants' attorneys had 'discussed the accusations in the indictment with [their] clients.' The magistrate judge asked the defendants whether they had discussed the charges with their attorneys; they answered 'yes.' We have held that where a judge confirms that defense counsel has informed a defendant of the charges against him, no prejudice results from the failure of the judge to personally inform the defendant of those charges. *United States v. Grote*, 632 F.2d 387, 389 (5th Cir. 1980) ('We do not believe that any prejudice has resulted from the failure of the trial judge personally to inform the defendant of the charges against him. The trial judge assigned that responsibility to appointed counsel, and he satisfied himself that that responsibility had been discharged before calling upon the defendant to plead.').

Nevertheless, in addition to confirming that the defendants' attorneys had discussed the charges with their clients, the magistrate judge also summarized both counts for the defendants:

> Each of you are accused in Count One of the indictment that alleges that you conspired or made an agreement to possess with intent to distribute cocaine, five kilograms or more, on or about October 31st, 2006, and continuing through November the 2nd of 2006. That is Count One of the indictment. Count Two alleges that you each possessed with intent to distribute cocaine, five or more kilograms of cocaine.

Nunez claims that the magistrate judge incorrectly told them that count two charged them with possession, and complains that the magistrate judge did not tell them that they had been charged with aiding and abetting possession. These alleged errors are without merit. The magistrate judge correctly summarized count two of the indictment, which plainly titled itself 'Possession with the Intent to Distribute (Cocaine)' and plainly charged the defendants

> with possession under 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(ii). That count two also charged the defendant with aiding and abetting possession under 18 U.S.C. § 2 does not render the magistrate judge's summary of count two inadequate, where the magistrate judge very correctly conveyed to the defendants 'the substance of the charge.' There was no error in the defendants' arraignment proceedings.

*Nunez*, 320 F. App'x at 242–43 (footnote, citations omitted). Because Defendant fails to demonstrate that the magistrate's statement of the charges at arraignment was improper, he fails to demonstrate that trial counsel was deficient in failing to raise what would have been a frivolous objection. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that trial counsel is not ineffective in failing to raise futile or meritless objections).

Defendant fails to demonstrate ineffective assistance of counsel on this issue.

*Failure to object to jury charge*

Defendant complains that trial counsel failed to object to the Court's allegedly improper jury instruction as to the possession count.

Defendant unsuccessfully challenged the propriety of the Court's jury instruction on appeal. In rejecting Defendant's argument, the Fifth Circuit Court of Appeals held as follows:

> Nunez claims that he was charged not with possession, but with aiding and abetting possession, and that the district court therefore erred when it instructed the jury that Nunez had been charged with possession. This issue is without merit. As previously stated, the indictment very plainly charged Nunez with possession with intent to distribute cocaine.
>
> Moreover, we note that in its preliminary instructions to the jury, the district court recited the elements of conspiracy, possession, and aiding and abetting possession. In its jury charge prior to deliberations, the district court carefully

11

> explained the elements of conspiracy, possession, and aiding and abetting possession. The instructions were consistent with the charges in counts one and two of the indictment. The judgment indicates that Nunez was convicted of conspiracy and aiding and abetting possession with intent to distribute. Contrary to his assertion otherwise, Nunez was not convicted of an unindicted crime.

*Nunez*, 320 F. App'x at 243. Because Defendant fails to demonstrate that the complained-of jury charge was objectionable, he fails to demonstrate that trial counsel was deficient in failing to raise what would have been a frivolous objection. *See Koch*, 907 F.2d at 527.

Defendant fails to demonstrate ineffective assistance of counsel on this issue.

*Failure to argue "mere presence"*

Defendant contends that trial counsel should have argued that Defendant was not part of the criminal transaction and was only present at the scene as a bystander. He contends that, had counsel argued this "mere presence" defense, he would not have been found guilty of conspiracy.

Defendant unsuccessfully challenged on appeal the sufficiency of the evidence based on his "mere presence" argument. In rejecting Defendant's argument, the Fifth Circuit Court of Appeals held as follows:

> Nunez argues that the evidence showed only that he was present, and not that he was a co-conspirator. He points out that agents did not recover his fingerprints from either the blue bag or the pieces of paper on which what appeared to be monetary calculations had been written, and claims the pieces of paper could not otherwise prove his participation in the conspiracy. Nunez neglects, however, to mention that there was testimony that the calculated figures on the pieces of paper represented the profit that would be made from the sale and how it would be split between Guerra and Nunez. He also neglects to mention that there was testimony that Guerra called Nunez

12

> twenty-two times on October 31, that on November 2 Nunez and Guerra celebrated in Nunez's driveway only minutes before Trevino delivered the cocaine, and that Nunez told Contreras the cocaine 'was good.' And although as a fact it is not sufficient in and of itself, it bears noting that all of these events transpired at Nunez's house. Knowledge of and voluntary participation in a conspiracy 'may be inferred from a 'collection of circumstances.'' The 'collection of circumstances' here was sufficient to infer Nunez's knowledge and voluntary participation and was therefore sufficient to convict Nunez of conspiracy.

*Nunez*, 320 F. App'x at 240 (citations omitted). Because the Fifth Circuit found the evidence introduced by the State at trial sufficient to support the conspiracy conviction, Defendant fails to demonstrate that, but for counsel's failure to assert Defendant's "mere presence" at the transaction, there is a reasonable probability that he would not have been found guilty of the charge. *See Koch*, 907 F.2d at 527. Further, the Court instructed the jury here that, "Mere presence at the scene of an event, even with knowledge that a crime is being committed . . . does not necessarily establish proof of the existence of a conspiracy." (Docket Entry No. 88, p. 14.)

Defendant fails to demonstrate ineffective assistance of counsel on this issue.

*Failure to request expert witness instruction*

Defendant complains that trial counsel failed to object properly to the expert witness testimony of the Government's witness, Craig Cornelius, in that counsel did not seek a limiting instruction as to the witness's testimony. Specifically, Defendant argues as follows:

> Defense counsel also failed to properly object to Cornelius' testimony who did not personally observe the behavior but erroneously asserted that he was somehow entitled to offer 'expert' opinion testimony. Although defense counsel did timely make an objection to the fact that Cornelius was not an

13

expert and not entitled to offer opinions on how drug transactions work, *defense counsel proffered no instruction on the expert testimony of agent Cornelius even though the court gave such an instruction to the jury for the fingerprint expert Maberry*.

(Docket Entry No. 188, p. 9, emphasis added.) Defendant presents no additional or clarifying argument in his reply.

The record shows that Craig Cornelius, a special agent for the Drug Enforcement Administration, was the Government's case agent involved in Defendant's transaction. (Docket Entry No. 154, pp. 93, 123.) Cornelius testified at trial regarding cell phone records that detailed calls between Guerra, Nunez, Alvarez, and Contreras from October 31 through November 2, 2006. He testified that on October 31, 2006, the day Guerra met with the undercover agent and the confidential informant and agreed to sell them the cocaine, Guerra made twenty-two calls to Nunez, and explained the significance of these calls within the context of a drug transaction. He specifically testified that, based on his training and experience, a number of the calls were made to the supplier of the cocaine, although the identity of the supplier was unknown. (Docket Entry No. 154, pp. 249–250.) On cross examination, Cornelius acknowledged that he could not tell the jury for a fact that the telephone number belonged to the cocaine supplier. *Id.*, p. 109.

The record further shows that the jury was provided the following expert witness instruction at the guilt-innocence phase of trial:

> During the trial you heard the testimony of Joe Maberry, who has expressed opinions concerning fingerprint examination. If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or

14

>in determining a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters.
>
>Merely because such a witness has expressed an opinion does not mean, however, that you must accept this opinion. You should judge such testimony like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.

(Docket Entry No. 88, p. 8.) Defendant argues that counsel failed to request this instruction as to Cornelius's testimony.

It is unclear from the record whether trial counsel cross examined Cornelius as an expert witness in any capacity. At one point, counsel asked Cornelius to give his opinion as to "where [Defendant] was involved" in the underlying transaction. (Docket Entry No. 154, p. 129.) After Cornelius responded, trial counsel asked him the source of his information. Cornelius answered, "You asked me my opinion as an expert in this type of investigation. I gave you what I know to be fact and also my opinion as to the arrangement between these two." *Id*. Counsel for co-defendant Guerra objected to trial counsel's questioning Cornelius as an expert, and stated that, "He was not qualified as an expert, number one, and I think he's asking questions outside his expertise." *Id*., p. 130. Trial counsel continued questioning Cornelius without waiting for a ruling from the Court, and informed Cornelius that he was not an expert. *Id*. Given this lack of clarity in the record, Defendant does not show that trial counsel was deficient in not requesting an expert witness jury instruction as to Cornelius.

Similarly, Defendant fails to show that the Court's refusal to provide the instruction, had counsel requested it, would have constituted reversible error.

Regardless, Defendant fails to establish actual prejudice. Defendant does not show that, but for counsel's deficient performance in not requesting the jury instruction, or in asking Cornelius an opinion question, there is a reasonable probability that the result of his trial would have been different. The Court's written instructions to the jury included the standard instruction for credibility of witnesses, which informed the jurors that they were "the sole judges of the credibility or 'believability' of each witness and the weight to be given the witnesses's testimony." (Docket Entry No. 88, p. 6.) Defendant does not argue or show that this instruction was insufficient to inform the jurors that they were free to accept or reject any or all of Cornelius's testimony. Nor does Defendant establish a reasonable probability that the result of his trial would have been different had the jury been provided the expert witness instruction as to Cornelius. In short, Defendant fails to meet his burden of proving either deficient performance or prejudice under *Strickland*.

Defendant is not entitled to habeas relief on this claim.

*Failure to object at sentencing as to incorrect weight of cocaine*

Defendant complains that trial counsel failed to object to the Court's calculation of the weight of the cocaine at sentencing.

Defendant raised an issue on direct appeal challenging the Court's calculation of the weight of the cocaine at sentencing. In rejecting Defendant's issue, the Fifth Circuit Court of Appeals held as follows:

> Nunez claims the district court improperly used the cocaine's net weight, as opposed to its 'pure' weight, to determine his total offense level for sentencing purposes. He argues the court should have calculated the weight of the cocaine for sentencing purposes by multiplying the cocaine's net weight, 17.01 kilograms, by its purity, 80 percent. If the court had thus calculated the cocaine's weight, Nunez would have been liable for only 13.6 kilograms of cocaine, and would have qualified for a base offense level of 32, for which the sentencing range is 121 to 151 months. Instead, the court accepted for sentencing purposes the cocaine's net weight, 17.01 kilograms, which assigned to Nunez a base offense level of 34, for which the sentencing range is 151 to 188 months.
>
> We find no error in the court's use of the cocaine's net weight to determine Nunez's base offense level. Under the sentencing guidelines, a court determines a defendant's base offense level in drug cases by reference to a drug quantity table. The table lists controlled substances and assigns base offense levels by their weights. The notes that accompany the table explain:
>
>> Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.
>
> U.S.S.G. § 2D1.1(c) n.(A) (2006).
>
> For some controlled substances, for instance, PCP and methamphetamine, the table designates weight 'actual.' That designation refers to 'the weight of the controlled substance, itself, contained in the mixture or substance.' *Id*. at n.(B). The table does not, however, designate the weight of cocaine 'actual.' The weight of cocaine for sentencing purposes is instead 'the entire weight of any mixture or substance containing a detectable amount of [cocaine].' *Id*. at

n.(A). The district court properly accepted for sentencing purposes the cocaine's net weight, 17.01 kilograms. Nunez fails to establish procedural error.

*Nunez*, 320 F. App'x at 241–42 (emphasis deleted). Because Defendant fails to demonstrate that the Court's calculation was objectionable, he fails to demonstrate that trial counsel was deficient in failing to raise what would have been a frivolous objection. *See Koch*, 907 F.2d at 527.

Defendant fails to demonstrate ineffective assistance of counsel on this issue.

### *Evidentiary Hearing*

No evidentiary hearing is necessary in this proceeding as the motion and record conclusively show that Defendant is not entitled to the relief he seeks. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

### *Conclusion*

Defendant's section 2255 motion (Docket Entry No. 188) is DENIED. A certificate of appealability is DENIED. The related civil case in C.A. No. H-10-3713 is ORDERED CLOSED.

Signed at Houston, Texas on August 14, 2012.

_____
Gray H. Miller
United States District Judge